# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MASTERSON, | Case No. 1:11-cv-01179-DAD-SAB (PC) |
| Plaintiff, | ORDER REASSIGNING CASE TO U.S. DISTRICT JUDGE DALE A. DROZD FOR A LIMITED PURPOSE |
| v. | |
| S. KILLEN, et al., | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| Defendants. | |
| | [ECF Nos. 29, 31] |

Plaintiff Daniel Masterson is appearing pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

## I.

## REASSIGNMENT FOR LIMITED PURPOSE

On August 9, 2011, Plaintiff consented to the jurisdiction of a United States Magistrate Judge. (ECF No. 6.) On September 15, 2017, Defendants Killen, Fisher, Hall, Hampson, Rodriguez, Santoro, and Tolson consented to the jurisdiction of a United States Magistrate Judge.[1] (ECF No. 164.) On September 26, 2017, the Court reassigned this action from the docket of United States District Judge Dale A. Drozd to the docket of United States Magistrate Judge Stanley A. Boone for all further proceedings, including trial and entry of judgment, pursuant to 28 U.S.C. § 636(c)(1). (ECF No. 165.)

Prior to the reassignment, when this case was initially assigned to a different United States Magistrate Judge, on June 13, 2014, the Court screened Plaintiff's then-pending Third Amended

---

[1] Defendant Hampson was sued under her former name, "Velva Rowell." Defendant Hampson's current name is used throughout this order for sake of clarity.

1

Complaint, pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B). (ECF No. 29.) The Court found that the Third Amended Complaint stated a cognizable claim for retaliation in violation of the First Amendment against Defendants Killen, Hampson, Hall, Fisher, Rodriguez, Santoro, and Tolson, and for conspiracy to retaliate against Defendants Killen, Hampson, Hall, Rodriguez, Santoro, and Tolson. (ECF No. 8.) The Court also found that Plaintiff stated a cognizable claim for property deprivation under California law, which the Court could exercise supplemental jurisdiction over as a related claim. (Id. at 16-17.) Finally, the Court determined that Plaintiff did not state any other cognizable claims. The Court directed Plaintiff to notify the Court in writing whether he was willing to proceed on the cognizable claims in the Third Amended Complaint.

On June 25, 2014, Plaintiff notified the Court of his intent to proceed only on the claims found to be cognizable. (ECF No. 30.) Thus, on June 30, 2014, the Court dismissed certain other claims and defendants for the failure to state a cognizable claim for relief. (ECF No. 31). The Court indicated that jurisdiction existed under 28 U.S.C. § 636(c) based on the fact that Plaintiff had consented to Magistrate Judge jurisdiction, and no other parties had yet appeared. (See id. at 1-2.)

On November 9, 2017, the Ninth Circuit Court of Appeals ruled that 28 U.S.C. § 636(c)(1) requires the consent of all named plaintiffs and defendants, even those not served with process, before jurisdiction may vest in a Magistrate Judge to dispose of a civil case. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Accordingly, the Court did not have jurisdiction to dismiss the claims and defendants described in its June 30, 2014 order.

Based upon the foregoing, the undersigned will now make findings and recommendations that certain claims and defendants be dismissed from this action for the failure to state a cognizable claim in the Third Amended Complaint. The findings and recommendations are referred to United States District Judge Dale A. Drozd for this limited purpose, on the basis that Judge Drozd was most recently assigned to this action and is generally familiar with the claims, defenses, and parties in this action. Therefore, this limited-purpose referral is necessary and conducive to the equitable division and just, efficient, and economical determination of the business of the Court.

Finally, as the parties are aware, the litigation in this case has proceeded through several stages since the Third Amended Complaint was screened in June 2014. On August 16, 2017, the District

Judge ruled on several motions, including a motion for summary judgment on certain claims in this action that were pending at that time. (ECF No. 159.) The Court clarifies for the parties that the instant findings and recommendations only address the claims and defendants which were previously dismissed from this action on June 25, 2014.

Accordingly, the undersigned now recommends that the claims and Defendants described below be dismissed, for the reasons explained herein.

## II.

## SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fails to state a claim on which relief may be granted," or that "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-677; Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1020-1021 (9th Cir. 2010).

Prisoners proceeding pro se in civil rights actions are still entitled to have their pleadings liberally construed and to have any doubt resolved in their favor, but the pleading standard is now higher, Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted), and to survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

///

///

The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## III.

## THIRD AMENDED COMPLAINT ALLEGATIONS

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR"). Plaintiff is presently incarcerated at the California Substance Abuse Treatment Facility, in Corcoran, California, where the events at issue occurred. Plaintiff names as defendants Suzanne Killen (Librarian Technical Assistant), Velva Hampson (Senior Librarian), Brad Hall (Vice Principal), Kelly Santoro (Associate Warden), Captain Randy Tolson, Michael Fisher (Correctional Counselor II), Lieutenant F. A. Rodriguez, Johanna P. Cordova (Litigation Coordinator), and M. Gomez (Classification Staff Representative). All of the defendants were employed by the CDCR at the time of the events at issue.

Plaintiff's allegations arise from events occurring between July 6, 2010 and May 4, 2012.[2] The gravamen of Plaintiff's complaint is that all of the named defendants participated in a conspiracy to retaliate against him for filing inmate grievances and court cases, in violation of the First Amendment. Plaintiff also claims that in the course of the retaliation, his personal property was taken, and he was denied equal protection, due process, and access to the courts.

In July 2010, Plaintiff filed a grievance against Defendants Killen and Hampson for refusing to process Plaintiff's legitimate request for copies related to pending litigation which defendant Killen referred to as a "bulls--t lawsuit against custody staff." (Third Amended Complaint ("3ACP") at 7 ¶1.) Shortly thereafter, defendants Killen and Hampson—with the assistance and approval of Defendants Rodriguez and Hall—caused Plaintiff to be removed from his paid position as a library clerk and reassigned to a non-paid, less desirable position on the yard crew picking up trash. Plaintiff alleges

---

[2] On March 8, 2013, Plaintiff was granted leave to supplement the complaint by adding related ―allegations of incidents occurring [after the date the initial complaint for this action was filed,] between August 11, 2011 and August 29, 2012.‖ (Doc. 23 at 3:24-25.)

4

that there was no legitimate penological reason for the change in his position. Plaintiff filed an inmate grievance concerning this retaliation.

On August 18, 2010, during an interview about the retaliation, Defendant Hall threatened Plaintiff with "unfavorable consequences" if he revealed any part of the interview in any complaints filed against Defendant Killen. (3ACP at 8 ¶4.)

On September 14, 2010, Plaintiff was interviewed by the Appeals Coordinator [not a defendant] about Plaintiff's reassignment from his library clerk position to his assignment on the yard crew. The Appeals Coordinator told Plaintiff that pursuant to state regulations, Defendants Killen, Hampson, Hall and Rodriguez could not remove Plaintiff from a paid position to a non-paid position "absent disciplinary action or some kind of documentation requesting action be taken by a Classification Committee." (3ACP at 9 ¶7.) Defendants had not submitted any of the required documentation. The Appeals Coordinator told Plaintiff that CCR Title 15 creates a "liberty interest" requiring "Due Process" under the Fourteenth Amendment. (Id.)

On September 30, 2010, Defendant Killen refused Plaintiff access to the law library to conduct legal research and obtain needed legal copies. When Plaintiff asked why he was being denied access, defendant Killen said, "You haven't figured out you can't 602 [file a complaint against] us?" (3ACP at 8 ¶5.)

On October 5, 2010, Plaintiff was interviewed by Defendant Hampson about Defendant Killen's retaliatory actions and harassment of Plaintiff. Defendant Hampson stated that she was in "collaboration" with any actions done by Defendant Killen, including denying Plaintiff copies and access to the law library. (3ACP at 8 ¶6.)

On January 27, 2011, Defendant Hampson informed Plaintiff that she and Defendant Killen were well aware that Plaintiff was preparing to file a § 1983 lawsuit against them, which made it necessary for her and other defendants to have "collusion" between them. (3ACP at 9 ¶8.) Plaintiff acknowledged that he intended to file a lawsuit because of the retaliation.

On February 15, 2011, Defendant Hampson wrote the first of several adverse chronos [reports] against Plaintiff, in collusion with Defendant Killen. Defendant Hampson documented that she was "in fear [that Plaintiff] can make her [Defendant Killen] lose her temper so that he will have a real

5

reason to file a lawsuit against her," insinuating that Defendant Killen has a history of losing her temper, resulting in a pattern of retaliation. (3ACP at 9 ¶9.)

On May 7, 2011, Defendant Killen threatened Plaintiff by stating that if he filed any more complaints against her or pursued any pending complaints, "I'll have you thrown in the hole and transferred. You know I can do it too." (3ACP at 9 ¶10.)

On May 20, 2011, Defendant Hampson authored her second adverse chrono, alleging that Plaintiff's request to have Defendant Killen cease her retaliatory actions was Plaintiff "attempting to be overfamiliar with LTA [Defendant] Killen." (3ACP at 10 ¶11.) Defendant Hampson knew that using the word "overfamiliar" would automatically cause Plaintiff to be re-housed in administrative segregation (Ad-Seg), under the guise of an investigation. (Id.) Defendant Fisher ordered Defendant Hampson to recant the use of the word "overfamiliar," as it was false and Defendant Hampson's intentions too obvious. (Id.) Defendant Hampson was forced to document the recantment.

On June 24, 2011, Defendant Killen attempted to intimidate Plaintiff via Institutional Mail by indicating that Defendants were going to illegally take money from Plaintiff's prison trust account by falsely claiming that Plaintiff did not return legal cases. When Plaintiff produced evidence that the legal cases were in fact returned, Defendant Killen responded with an adverse chrono.

On June 28, 2011, Defendant Hall interviewed Plaintiff about a grievance filed alleging that Defendants Killen, Hampson, and Hall had attempted to discourage Plaintiff from filing federal litigation. Defendant Hall told Plaintiff that he was also in collusion with Defendants Killen and Hampson. Defendant Hall inadvertently left incriminating handwritten notes taken during the interview, attached to the appeal when the appeal was returned to Plaintiff, revealing a collusion and conspiracy among the Defendants.

On July 12, 2011, Plaintiff presented documentation to Defendant Killen showing that Plaintiff had a court-ordered deadline and needed to obtain copies. Defendant Killen refused and stated, "602 that!" (3ACP at 11 ¶15.) When Plaintiff stated that a complaint would be filed, Defendant Killen said that Plaintiff would receive yet another retaliatory disciplinary report. Killen followed through with the threat, issuing Plaintiff a disciplinary report. Plaintiff subsequently missed the court deadline and was not permitted to file a reconsideration motion, thus causing "Actual Injury." (Id.)

On July 13, 2011, Defendant Fisher threatened Plaintiff by stating, "You had better back off with the appeals," referring to the complaints filed against Defendants Killen, Hampson, and Hall. (3ACP at 11 ¶14.)

On August 11, 2011, at the request of Defendant Hampson and on the orders of Defendant Santoro, proven by documentation and admission, Defendant Rodriguez threatened to throw Plaintiff in the hole if Plaintiff filed any further complaints or pursued any pending complaints or litigation. On August 16, 2011, Plaintiff filed a motion for a protective order with this court.

On August 24, 2011, Plaintiff was interviewed for a second time by Appeals Coordinator [R. M. Hall, not a defendant] regarding Plaintiff's appeal about his change in job assignment. The Appeals Coordinator stated that Defendants Killen, Hampson, Hall, and Rodriguez could not reassign Plaintiff without due process and definitely not in retaliation for Plaintiff filing a complaint. On September 14, 2011, the Appeals Coordinator provided Plaintiff with information and documentation to support this contention.

On September 9, 2011, during an interview with Plaintiff, Defendant Hampson admitted that she did in fact contact Defendant Rodriguez on or about August 11, 2011, requesting Defendant Rodriguez to persuade Plaintiff from filing any further complaints and to abandon pending litigation.

On October 11, 2011, Defendant Killen authored a fourth disciplinary chrono in retaliation for Plaintiff's litigation against Defendant Killen. The chrono alleged that Plaintiff had returned case law documents directly to the Education Principle instead of to Defendant Killen. There was no actual violation of any prison rule or regulation involved.

On October 18, 2011, Defendant Killen authored another adverse disciplinary chrono after "literally stalk[ing]" Plaintiff by searching the prison yard to locate him, documenting that Plaintiff was standing with a group of prisoners "laughing." (3ACP at 12 ¶20.)

Defendant Hampson issued three adverse chronos and Defendant Killen at least seven, with absolutely no legitimate penological goal.

///

///

///

7

On November 16, 2011, Plaintiff asked Defendant Santoro why he ordered Defendant Rodriguez to threaten Plaintiff with being thrown in the hole for maintaining litigation, and asked whether Defendant Santoro was going to address the ongoing harassment and retaliation by Defendants Killen and Hampson. Defendant Santoro became visibly agitated and briskly walked away.

On December 17, 2011, Defendant Killen issued Plaintiff a ducat to report to the law library. Plaintiff was escorted by two officers. Defendant Killen opened the library door and told Plaintiff and the officers that she and her clerk (Inmate Waymon Berry) were the only two in the library. One of the officers asked Defendant Killen how many prisoners were ducated for that day, and Defendant Killen replied only the Plaintiff. The officer and Plaintiff found this to be extremely odd and suspect. Due to Defendant Killen's past threats to Plaintiff, Plaintiff was not comfortable entering the library with only Defendant Killen and her clerk. Defendant Killen became angry and informed Plaintiff and the officer that she would be issuing Plaintiff a serious disciplinary report for refusing to enter the library.

On December 27, 2011, according to Plaintiff's housing unit staff, Defendant Killen ordered housing unit officers to search Plaintiff's cell and confiscate items that Plaintiff used to prepare legal documents. The cell was left in disarray with documents thrown about the cell. There was no penological reason for the cell search and confiscation of property.

On December 30, 2011, Defendant Killen's clerk, Inmate Berry, threatened Plaintiff by stating that he would provide false information to prison officials implicating Plaintiff and claim Plaintiff as an enemy, if Plaintiff refused to dismiss the pending litigation against Defendant Killen. This threat would cause Plaintiff to be re-housed in Ad-Seg under investigation. Plaintiff wrote a declaration, under penalty of perjury, about the threats and sent it to Defendant Cordova, with copies to other prison officials. Defendant Cordova failed to act on the threats against Plaintiff.

On January 7, 2012, Inmate Berry issued Plaintiff an ultimatum with Defendant Killen's knowledge and support. Inmate Berry said if Plaintiff did not drop the litigation and complaints against Defendant Killen, he would be thrown in the hole based on false information.

///

///

On January 8, 2012, Plaintiff was informed by prison officials that Inmate Berry had submitted "confidential" information, which resulted in Plaintiff being placed in Ad-Seg under investigation. (3ACP at 14 ¶27.)

On January 12, 2012, Defendant Tolson confirmed during an interview with Plaintiff that Inmate Berry was behind Plaintiff being thrown in the hole, and that Defendant Tolson was fully aware of the circumstances of Plaintiff's placement in Ad-Seg.

On January 19, 2012, Plaintiff's Ad-Seg counselor informed Plaintiff that Inmate Berry had not only provided the false information, but also claimed there was an "enemy situation" between him and Plaintiff. (3ACP at 14-15 ¶29.)

The investigation into the false allegations against Plaintiff was completed on January 22, 2012, confirming that the information could not be substantiated. However, Defendants Tolson, Fisher, and Santoro ordered Plaintiff to be kept in Ad-Seg in further retaliation.

On January 23, 2012, Plaintiff received a CDCR-22 Inmate Request for Interview form with a written response from Defendant Cordova. Defendant Cordova acknowledged and admitted receiving Plaintiff's December 30, 2011 declaration. Defendant Cordova also admitted that she made Defendants Tolson and Fisher fully aware of the threats made and plot against Plaintiff by Inmate Berry, prior to Inmate Berry's actions. Defendants Tolson and Fisher failed to protect Plaintiff.

On January 25, 2012, Plaintiff's counselor informed him that Inmate Berry was housed in Ad-Seg and would be transferred to another institution, so there was no reason for Plaintiff not to be released back to the facility.

On February 1, 2012, Plaintiff's counselor informed him that he was ordered by Defendants Tolson and Fisher to keep Plaintiff in the hole and put Plaintiff up for transfer.

On February 2, 2012, Plaintiff attended a meeting in the Institutional Classification Committee (ICC) room. Defendant Santoro told Plaintiff that he could not be released from Ad-Seg because Defendant Tolson did not submit the Investigation Closure Report. Defendant Santoro said that Plaintiff could be transferred to Corcoran State Prison, inferring that even if the Closure Report had been submitted, Plaintiff would not have been released from the hole. It was later verified by Plaintiff's counselor and Defendant Tolson that Defendant Santoro conspired with other named

9

Defendants to keep Plaintiff in the hole and transfer him in retaliation, and in fulfillment of her ordering Plaintiff threatened on August 11, 2011.

On February 3, 2012, during an interview about Plaintiff's appeal concerning her and Defendant Killen's retaliation, Defendant Hampson told Plaintiff she knew the circumstances behind why Plaintiff was re-housed in Ad-Seg. Defendant Hampson then stated, "Berry has been severely chastised for his actions." (3ACP at 16 ¶35.) She (Hampson) told Plaintiff he would never be able to prove that she or Defendant Killen had prior knowledge of Inmate Berry's plan.

On the evening of February 3, 2012, while waiting to be admitted to the prison's infirmary, Plaintiff was placed into a holding cage. Directly across from the cage was an observation room, and on the door was a sign reading "Ad-Seg" and Inmate Berry's name. Inmate Berry was housed in that room. Plaintiff had a brief conversation with Berry, in which Berry admitted his actions of having Plaintiff thrown in the hole under false pretenses, apologized to Plaintiff, and admitted that Defendant Killen knew in advance of Berry's plan and had encouraged Berry on January 7, 2012 to execute the plan, stating something like, "That will fix his a--." (3ACP at 17 ¶36.) Defendant Killen conspired with Berry to have Plaintiff thrown into the hole and transferred for pursuing this lawsuit.

On February 8, 2012, Plaintiff's counselor informed him that although there was no legitimate reason to keep Plaintiff in Ad-Seg, Defendants Tolson and Fisher ordered Plaintiff not to be released from Ad-Seg.

On February 15, 2012, Plaintiff's counselor told him that it was Defendant Santoro who had ordered Defendants Tolson and Fisher to come up with a reason for Plaintiff's Ad-Seg confinement and transfer. The counselor stated that the order to keep Plaintiff in Ad-Seg and transfer him was directly related to Plaintiff's litigation against defendants. The counselor also said that Inmate Berry's transfer had been rescinded and Berry would be released from Ad-Seg and returned to Delta Facility. This was done on Defendant Santoro's orders, forcing Plaintiff to remain in Ad-Seg pending transfer.

On February 27, 2012, while being escorted back to his cell, Plaintiff met up with Defendant Tolson who admitted that Defendant Santoro ordered that Plaintiff remain in Ad-Seg and be transferred. There was no penological reason for Plaintiff to remain in Ad-Seg. The only logical reason was to punish Plaintiff for maintaining litigation.

On March 1, 2012, Plaintiff was again brought before the ICC. Defendant Tolson was there as a member of the committee. Plaintiff demanded that it be put on the record that the ordered transfer was an obvious retaliatory transfer for Plaintiff maintaining a civil suit against prison officials, and Tolson made a snide remark under his breath to Plaintiff, "We told you that you should have dropped the lawsuit." (3ACP at 18 ¶40.)

On March 2, 2012, Plaintiff submitted an inmate/parolee form alleging the retaliation and conspiracy to keep Plaintiff in Ad-Seg and transfer him.

On March 14, 2012, Defendant Tolson interviewed Plaintiff and gave him the January 19, 2012 CDC-114-D (Ad-Seg Placement Order) by Acting Chief Deputy Warden Tann [not a defendant]. Defendant Tolson said the CDC-144-D was finally issued because of Plaintiff's letters of complaint to the Warden. This was a due process violation. Defendant Tolson admitted that the Investigation had been completed by January 22, 2012. When it was brought up that the pending lawsuit may be the motive for the retaliation, Tolson made affirmative motions and stated that he was currently "named in five other pending lawsuits," as if he were proud of the fact and there was no way a court or jury would find him guilty of anything. (3ACP at 19-20 ¶42.)

On April 10, 2012, Plaintiff was transferred in retaliation from SATF to CSP-LAC (a more restrictive prison) as punishment, where he was immediately housed in Ad-Seg due to an alleged lack of bed space.

On May 4, 2012, Defendant Fisher, in response to an appeal, stated that on March 1, 2012, Defendant Tolson recommended the transfer and Defendant Gomez endorsed the transfer. Plaintiff contends that Defendant Gomez's action was part of a conspiracy with the other named defendants.

Plaintiff filed a claim with the California Victim Compensation and Government Claims Board within the required time frame. Plaintiff also properly filed a separate administrative appeal on the issue of defendants confiscating and destroying some of Plaintiff's personal and legal property.

Plaintiff requests monetary damages, declaratory relief, injunctive relief, attorney fees, and court costs and fees.

///

///

## IV.

## DISCUSSION

### A. Equal Protection

The Equal Protection Clause requires that persons who are similarly situated be treated alike. City of Cleburne, Tex. v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008). An equal protection claim may be established by showing that Defendants intentionally discriminated against Plaintiff based on his membership in a protected class, Comm. Concerning Cmty. Improvement v. City of Modesto, 583 F.3d 690, 702-03 (9th Cir. 2009); Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02, 128 S. Ct. 2146 (2008); Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S. Ct. 1073 (2000); Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008); North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Plaintiff claims that his rights to equal protection were violated by each of the defendants. (3ACP at 20 ¶49.) Plaintiff does not allege facts showing that he was intentionally discriminated against based on his membership in a protected class, or intentionally treated differently than similarly situated individuals without a rational relationship to a legitimate state purpose. Therefore, Plaintiff fails to state a claim for relief for violation of his right to equal protection in the Third Amended Complaint.

### B. Retaliation

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)). Also protected by the First Amendment is the right to pursue civil rights litigation in federal court without retaliation. Silva v. Di Vittorio, 658 F.3d 1090, 1104 (9th Cir. 2011). "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567–68 (9th Cir. 2005).

Plaintiff alleges that defendants retaliated against him by filing adverse chronos and false disciplinary reports against him, threatening and harassing him, confining him in Ad-Seg, transferring him to another institution, refusing him access to law library services, and removing him from his position as library clerk, because Plaintiff filed prison grievances and lawsuits against prison officials. The court finds that the Third Amended Complaint states cognizable claims for retaliation against Defendants Killen, Rowell, Hall, Fisher, Rodriguez, Santoro, and Tolson. However, Plaintiff fails to state a claim for retaliation against any other defendant.

### C. Conspiracy

Plaintiff alleges that defendants conspired to retaliate against him. In the context of conspiracy claims brought pursuant to section 1983, a complaint must "allege [some] facts to support the existence of a conspiracy among the defendants." Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim-Panahi v. Los Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988). Plaintiff must allege that defendants conspired or acted jointly in concert and that some overt act was done in furtherance of the conspiracy. Sykes v. California, 497 F.2d 197, 200 (9th Cir. 1974).

A conspiracy claim brought under section 1983 requires proof of "an agreement or meeting of the minds to violate constitutional rights," Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin, 312 F.3d at 441 (quoting United Steel Workers of Am., 865 F.2d at 1541).

The court finds that Plaintiff states cognizable claims for conspiracy to retaliate, against Defendants Killen, Rowell, Hall, Fisher, Rodriguez, Santoro, and Tolson. However, Plaintiff fails to state a claim for conspiracy against any other defendant.

///

**D. Due Process**

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of procedural due process, a plaintiff must first establish the existence of an interest for which the protection is sought. Liberty interests may arise from the Due Process Clause itself or from state law. Hewitt v. Helms, 459 U.S. 460, 466-68 (1983). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. Sandin v. Conner, 515 U.S. 472, 481-84 (1995). Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. at 484.

    1. Detention in Ad-Seg

Plaintiff alleges that he was subject to retaliatory actions resulting in his detention in Ad-Seg, which entitled him to due process protections under federal law. The Due Process Clause itself does not confer on inmates a liberty interest in being confined in the general prison population instead of administrative segregation. See Hewitt, 459 U.S. at 466-68; see also May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997) (convicted inmate's due process claim fails because he has no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence) (quotations omitted); Resnick v. Hayes, 213 F.3d 443, 447 (9th Cir. 2000) (plaintiff's placement and retention in the SHU was within range of confinement normally expected by inmates in relation to ordinary incidents of prison life and, therefore, plaintiff had no protected liberty interest in being free from confinement in the SHU) (quotations omitted).

Plaintiff does not allege facts showing an atypical and significant hardship or any specific injury caused by conditions in Ad-Seg. The fact that conditions in Ad-Seg do not mimic those afforded the general population does not trigger due process concerns. Plaintiff fails to establish the existence of a protected liberty interest in remaining free from Ad-Seg. Therefore, Plaintiff fails to state a cognizable claim for violation of his rights to due process based on his detention in Ad-Seg.

14

### 2. Transfer to Another Institution

Prison inmates do not have a constitutional right to be incarcerated at a particular correctional facility or to be transferred from one facility to another. Meachum v. Fano, 427 U.S. 215, 224-25 (1976); see also Olim v. Wakinekona, 461 U.S. 238, 244-45 (1983). Here, Plaintiff alleges that he was transferred from one facility to another in retaliation for filing grievances and court cases. Plaintiff has not alleged facts demonstrating that he had a protected liberty interest in not being transferred. Therefore, Plaintiff fails to state a due process claim based on his prison transfer.

### 3. Job Assignment

Plaintiff alleges that he lost his preferred prison job in retaliation for filing grievances and court cases. Plaintiff does not have a liberty interest in his prison job, Sandin, 515 U.S. at 484, nor does Plaintiff have a property interest in his prison job, see Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1997); Rizzo, 778 F.2d at 531. Because Plaintiff has neither a liberty interest nor a property interest in his prison job, Plaintiff was not entitled to any procedural due process protections in conjunction with the loss of his job. Accordingly, Plaintiff's allegations fail to give rise to a cognizable claim for relief under section 1983 for violation of the Due Process Clause based on his job loss.

### 4. Loss of Personal Property

Plaintiff alleges that some of his personal property was taken by Defendants. The United States Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Thus, where the state provides a meaningful post-deprivation remedy, only authorized, intentional deprivations constitute actionable violations of the Due Process Clause. An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. Piatt v. McDougall, 773 F.2d 1032, 1036 (9th Cir. 1985); see also Knudson v. City of Ellensburg, 832 F.2d 1142, 1149 (9th Cir. 1987).

California law provides an adequate post-deprivation remedy for any property deprivations. See Cal. Gov't Code " 810-895; Barnett v. Centoni, 31 F.3d 813, 816-17 (9th Cir. 1994). California's Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the

California Victim Compensation and Government Claims Board, formerly known as the State Board of Control, no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2 (West 2011). Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. State v. Superior Court of Kings County (Bodde), 32 Cal. 4th 1234, 1245, 90 P.3d 116, 124, 13 Cal. Rptr. 3d 534, 543 (2004); Mangold v. California Pub. Utils. Comm'n, 67 F.3d 1470, 1477 (9th Cir. 1995). To state a tort claim against a public employee, a plaintiff must allege compliance with the Tort Claims Act. State v. Superior Court, 32 Cal. 4th at 1245, 90 P.3d at 124, 13 Cal. Rptr. 3d at 543; Mangold, 67 F.3d at 1477; Karim-Panahi, 839 F.2d at 627.

Plaintiff alleges that his property was improperly confiscated out of retaliation, which indicates that the deprivation of property was intentional and unauthorized. Thus, Plaintiff's remedy would be found under California law. Plaintiff states that he filed a timely claim with the California Victim Compensation and Government Claims Board. (3ACP at 19 ¶46.) Therefore, his property claim is cognizable under state law. The court may exercise supplemental jurisdiction over Plaintiff's related state law claim, as he has stated a cognizable claim under federal law. See 28 U.S.C. § 1367.

### E. Denial of Access to Courts

Prisoners have a constitutional right to meaningful access to the courts. Lewis v. Casey, 518 U.S. 343, 346, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996); Bounds v. Smith, 430 U.S. 817, 824–25, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977). The right of access is merely the right to bring to court a grievance the inmate wishes to present, and is limited to direct criminal appeals, habeas petitions, and civil rights actions. Lewis, 518 U.S. at 354. Within this right to access the courts is the right for prisoners to prepare legal documents without active interference from prison officials. Id. at 350; Silva v. Di Vittorio, 658 F.3d 1090, 1103 (9th Cir. 2011) ("[P]risoners have a right under the First and Fourteenth Amendments to litigate claims challenging their sentences or the conditions of their confinement to conclusion without active interference by prison officials."). Such claims may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). Christopher v. Harbury, 536 U.S. 403, 414, 122 S. Ct. 2179, 153 L. Ed. 2d 413 (2002). To claim a

violation of this right, a plaintiff must show that he has suffered an actual injury as a result of the alleged interference. Lewis, 518 U.S. at 350.

In this case, Plaintiff alleges that he was denied access to the law library to make copies related to a court-ordered deadline in an existing case, and that he subsequently missed the court deadline and was not permitted to file a reconsideration motion, which suggests a backward-looking claim. "Where a prisoner asserts a backward-looking denial of access claim . . . he must show: 1) the loss of a 'nonfrivolous' or 'arguable' underlying claim; 2) the official acts frustrating the litigation; and 3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit." Phillips v. Hust, 477 F.3d 1070, 1076 (9th Cir. 2007) (citing Christopher, 536 U.S. at 413–14, overruled on other grounds, Hust v. Phillips, 555 U.S. 1150, 129 S. Ct. 1036, 173 L.Ed.2d 466 (2009)). In order to meet the requisite actual injury showing, a plaintiff must plead facts alleging "a nonfrivolous legal claim had been frustrated or was being impeded." Lewis, 518 U.S. at 353; see also Christopher, 536 U.S. at 415. "The complaint should 'state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it.'" Gonzalez v. Diaz, No. 1:10–CV–01287–GBC PC, 2011 WL 2671535 (E.D. Cal. July 6, 2011) (quoting Christopher, 536 U.S. at 417–18).

Plaintiff has not alleged facts showing that a nonfrivolous legal claim was frustrated or impeded, stated the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, or described a remedy available under the access claim that is not otherwise available in a future suit. Therefore, Plaintiff fails to state a claim for denial of access to the courts.

### F. Failure to Protect

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832-33, 114 S. Ct. 1970 (1994) (internal citations and quotations omitted). Prison officials have a duty

17

to take reasonable steps to protect inmates from physical abuse. <u>Farmer</u>, 511 U.S. at 833; <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1040 (9th Cir. 2005).

To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately indifferent to a serious threat to the inmates' safety." <u>Farmer</u>, at 834. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial "risk of serious damage to his future health . . . ." <u>Id</u>. at 843 (citing <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993)). The Supreme Court has explained that "deliberate indifference entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing harm or with the knowledge that harm will result." <u>Farmer</u> at 835. The Court defined this "deliberate indifference" standard as equal to "recklessness," in which "a person disregards a risk of harm of which he is aware." <u>Id</u>. at 836-37.

The deliberate indifference standard involves both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." <u>Id</u>. at 834. Second, subjectively, the prison official must "know of and disregard an excessive risk to inmate health or safety." <u>Id</u>. at 837; <u>Anderson v. County of Kern</u>, 45 F.3d 1310, 1313 (9th Cir. 1995).

Plaintiff alleges that defendants failed to protect him from Defendant Killen and Inmate Berry when they failed to act on Inmate Berry's known threats to provide false information to prison officials implicating Plaintiff and to falsely claim Plaintiff as an enemy. Inmate Berry's threats do not rise to the level of a serious or excessive threat to Plaintiff's health or safety, as required to state an Eighth Amendment claim. Therefore, Plaintiff fails to state a claim for failure to protect him under the Eighth Amendment.

### G. Claims for Equitable Relief and Attorney Fees

In addition to money damages, Plaintiff's prayer for relief in the Third Amended Complaint seeks injunctive relief, declaratory relief, attorney's fees, and costs of suit. Any award of equitable relief is governed by the Prison Litigation Reform Act, which provides in relevant part that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly

drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A).

With regard to declaratory relief, "[a] declaratory judgment, like other forms of equitable relief, should be granted only as a matter of judicial discretion, exercised in the public interest." Eccles v. Peoples Bank of Lakewood Village, 333 U.S. 426, 431 (1948). "Declaratory relief should be denied when it will neither serve a useful purpose in clarifying and settling the legal relations in issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced by the parties." United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

In the event that this action reaches trial and the jury returns a verdict in favor of Plaintiff, that verdict will be a finding that Plaintiff's constitutional rights were violated. Therefore, a declaration that defendant violated Plaintiff's rights is unnecessary.

With regard to attorney's fees, "[i]n any action or proceeding to enforce a provision of section[] 1983 . . . , the court, in its discretion, may allow the prevailing party . . . reasonable attorney's fees . . . ." 42 U.S.C. § 1988(b). Plaintiff's contention that he is entitled to attorney's fees if he prevails is without merit. Plaintiff is representing himself in this action. Because Plaintiff is not represented by an attorney, he is not entitled to recover attorney's fees if he prevails. Gonzales v. Kangas, 814 F.2d 1411, 1412 (9th Cir. 1987).

**V.**

**RECOMMENDATIONS**

For the reasons explained above, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's equal protection claims, due process claims, failure to protect claims, and claims for denial of access to the courts be dismissed from this action for the failure to state a claim upon which relief may be granted; and

2. Defendants Johanna Cordova and M. Gomez be dismissed from this action for the failure to state any cognizable claims for relief against them.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections

19

with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**December 5, 2017**__

UNITED STATES MAGISTRATE JUDGE